### DOBSON et al. v. WARNER.

(Supreme Court, General Term, Fifth Department. October 23, 1890.)

1. SALE—VALIDITY—FRAUD.

Where a merchant owes $250,000 more than he is able to pay, and writes to one from whom he wishes to buy goods that he is good beyond question, the referee is justified in finding that he bought the goods, not expecting to pay for them, though the evidence shows that he did not fully realize his condition.

2. CROSS-EXAMINATION OF WITNESS.

In replevin for goods alleged to have been procured by W., defendant's assignor, with intent not to pay for them, it appeared that within two months of his assignment W., who was then insolvent, wrote plaintiffs that no one had any special claim upon him; that he was good beyond question. Upon direct examination, W. testified to facts designed to acquit him of any imputation of fraud. Held, that it was proper to ask him, on cross-examination, whether, when he wrote the letter, he intended that plaintiffs should understand that he was financially responsible.

Appeal from a judgment entered upon the report of a referee.

Action by John Dobson and another against Lucius B. Warner. There was judgment for plaintiffs, and defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

C. R. Lockwood, for appellant. Jerome B. Fisher and Devoe P. Hodson, for respondents.

MACOMBER, J. This action is replevin for goods sold and delivered by the plaintiffs to the defendant's assignor, one De Forest Weld, the ground of the recovery being that such goods were procured with a fraudulent purpose on the part of the purchaser not to pay for the same, he being, to his own knowledge, insolvent at the time of such purchase. When the merchandise was ordered, which was in the month of January, 1881, the purchaser was engaged in business as a dry-goods dealer in Jamestown, N. Y., Bradford, Pa., and Warren, Pa. The general assignment for the benefit of creditors made by Weld to the defendant was on March 1, 1881. At that time, and for several months prior thereto, he was hopelessly insolvent, as is shown by the schedules filed in pursuance of the assignment, and his own admissions under oath at the trial. Whether he was aware that he was in such financial straits, and whether he did not intend to pay for the goods so purchased, were purely questions of fact to be determined by the referee. The result ar-

rived at by him we find, after a somewhat protracted examination of the case, is well supported by the evidence. The referee has found that, with intent to deceive and defraud the plaintiffs, Weld made certain representations touching his financial condition, knowing them to be false at the time, whereby the plaintiffs were induced to sell and deliver goods to him in the sum of upwards of $6,000, and that the purchaser knew himself to be insolvent at the time of the purchase; that he took advantage of the plaintiffs' ignorance of his financial condition, and designedly concealed his insolvency, and purchased these goods on credit with the preconceived intention of not paying for them. One of the principal items of evidence against Weld is his letter, bearing date January 15, 1881, addressed to the plaintiffs, and signed by his own hand, which is as follows: "Referring to a conversation, my buyer, Mr. Haynes, had, a few days since, with your agent, Colonel Kelly, in New York, I would say no man or house has any special claim upon me. I am perfectly independent in my business,—buy where I can buy the cheapest and best. I treat all houses alike, without fear or favor. I have, under Providence, succeeded in building up the best business in this part of the country. I do a large business, pay promptly, and esteem myself good beyond any question for all my contracts. Anything you or any house sells me will be promptly paid when due." It did not require oral evidence to show that the design of this letter was to convey to the plaintiffs the fact that Weld was in good financial condition, and able to pay his debts as they matured; but, nevertheless, Weld himself acknowledged in his testimony that such was his purpose in writing that letter. At this time, Weld owed about $250,000 more than he was able to pay. While we do not think the evidence shows that he understood his precise condition in respect to the great disparity between his assets and liabilities, yet there is sufficient evidence to warrant the referee in finding that he knew that he was irretrievably insolvent when he gave the order for the goods in question. His liabilities, as stated in the schedule, were $572,972.38. His assets stated therein were $358,074.92. The testimony of Weld, taken at the trial, shows that the actual disparity between the assets and liabilities was something over $250,000. A perusal of the whole case confirms us in the correctness of the referee's conclusions of fact that Weld was, to his own knowledge, hopelessly insolvent from September 1, 1880, up to the time of the assignment, and that, during all that period, and longer, he knew he was not doing a good paying business. Upon the merits of the case, therefore, the referee was clearly right.

There are many exceptions to the reception and rejection of evidence spread out in the brief filed by the appellant, none of which, however, merit mention on this appeal save, perhaps, the following: "*Question.* You write no man or house had any special claim or lien. What did you understand that term to mean, 'special claim or lien?'" This was objected to by the plaintiffs, and sustained, to which an exception was taken. This language required no interpretation, except, perchance, the expression "special claim," and this was subsequently explained by the witness as referring to H. B. Clafflin & Co., who were preferred creditors of his, to whom he says he was not obligated or bound in any way different from what he was to other creditors of whom he had purchased goods.

The other exception arises from the following proceedings while Weld was under cross-examination by the plaintiffs' counsel: "*Question.* When you wrote that letter, did you intend they should understand that you were financially responsible?" Objected to by the defendant on the ground that the letter showed for itself,—that Dobson would get his inference from the letter itself. Objection was overruled, and exception given to the defendant. The answer was, "Yes, sir." The propriety of this question is in no respect dependent upon the question asked the witness as to his understanding of the meaning of certain words in the letter. It was necessary to charge home to

Weld the fact of a fraudulent intent, one of the necessary ingredients of which was actual insolvency, and the other was his knowledge of such insolvency, and that the plaintiffs relied and acted upon his representations touching his financial condition. A pretense had been made that he did not intend to represent himself as solvent at the time he wrote this letter; hence the propriety of the question put to him upon cross-examination. He had sworn, upon his direct examination, to facts designed to acquit him of any imputation of fraud. This question, now complained of, even if incompetent as affirmative matter, was legitimate and proper by reason of the course of the direct examination of the witness.

The only remaining point made by the learned counsel for the appellant meriting consideration is that the finding No. 12, made by the referee, to the effect that the value of the carpets belonging to the plaintiffs, and undisposed of at the time of the assignment, was $2,329.35, is not supported by any evidence, inasmuch as the amount of the order given to the plaintiffs' agent, Snedaker, is not separated from the whole amount of the carpets subsequently delivered to Weld. But none of the property was shipped to the purchaser until after the reception of the letter of January 15, 1881, upon which the plaintiffs acted, irrespective of any order received by their agent. Moreover, there is contained in the case a stipulation made by the attorneys of record for the respective parties to the effect that the schedule annexed to such stipulation contained a correct statement of the goods and carpets replevied by the sheriff by virtue of the requisition in this action, (being the goods and carpets in controversy herein,) giving the market value of each piece per yard, the number of yards therein in each piece at the time they were replevied, and that such stipulation might be read on the trial; and the same was actually put in evidence. The schedule annexed to such stipulation is a statement giving in detail the marks, number of yards in each piece, and price per yard, and value per piece at the time of the replevin, the whole amounting to $2,329.35,—precisely the sum found by the referee. The judgment appealed from should be affirmed. All concur.